Slip-Op. 09-120

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————— :
PSC VSMPO – AVISMA CORPORATION : 
and VSMPA – TIRUS, US, INC., :
  :
   Plaintiffs, :
  :
v. :
  :  Before: Judith M. Barzilay, Judge
UNITED STATES, :  Consol. Court No. 08-00321
  :  **Public Version**
   Defendant, :
  :
  and :
  :
US MAGNESIUM LLC, :
  :
   Defendant-Intervenor. :
———————————————————— :

OPINION & ORDER

[Plaintiffs' Motion for Judgment on the Agency Record is granted in part and denied in part. The remaining issues are reserved for adjudication after remand.]

Dated: October 20, 2009

  *Arent Fox LLP* (*John M. Gurley*, *Diana Dimitriuc Quaia*, *Mark P. Lunn*), for the plaintiffs.

  *Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*David S. Silverbrand*); *Daniel J. Calhoun*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

  *King & Spalding LLP* (*Stephen A. Jones*, *Jeffrey B. Denning*), for the defendant-intervenor.

  *Hogan & Hartson LLP* (*Lewis E. Leibowitz*, *Jonathan T. Stoel*), for the *amicus curae* Alcoa Inc.

    **Barzilay, Judge:**  Plaintiffs PSC VSMPO – AVISMA Corporation ("AVISMA") and

VSMPA – Tirus, US, Inc. ("Tirus"), (collectively, "Plaintiffs") and Defendant-Intervenor US

Magnesium LLC ("USM") move for judgment on the agency record, challenging various aspects

of the Department of Commerce's ("Department" or Commerce") final determination in

*Magnesium Metal from the Russian Federation:  Final Results of Antidumping Duty*

*Administrative Review*, 73 Fed. Reg. 52,642 (Dep't Commerce Sept. 10, 2008) ("*Final Results*").

For the reasons provided below, Plaintiffs' Motion for Judgment on the Agency Record is

granted in part and denied in part, and the remaining issues are reserved by the court for

adjudication after remand.

## I. Background & Procedural History

### A. The Industrial Processes at Issue

    The industrial processes at issue are at the heart of this case.  AVISMA's facility

produces magnesium metal and titanium sponge, along with other minor products.  In the first

processing stage, the mineral carnalite goes through dehydration and electrolysis, which creates

two main outputs:  raw magnesium and chlorine gas.  Most of the former undergoes further

refinement to become the subject merchandise, pure and alloyed magnesium, which Plaintiffs

sell on the open market.  AVISMA uses the latter as a catalyst which reacts with the mineral

ilmenite to create titanium tetrachloride by separating titanium from titanium oxide.  The

titanium tetrachloride then is combined with an amount of raw magnesium to strip the chlorine

from the titanium, resulting in titanium and magnesium dichloride.  The titanium subsequently

goes through additional processing to become a saleable product; the magnesium dichloride is

separated into chlorine, which is recycled back into the ilmenite separation process, and unusable

raw magnesium.

### B. Procedural History

In February 2004, USM filed an antidumping duty petition against imports of magnesium

metal from the Russian Federation. *See Notice of Preliminary Determination of Sales at Less*

*Than Fair Value and Postponement of Final Determination: Magnesium Metal From the*

*Russian Federation*, 69 Fed. Reg. 59,197, 59,197 (Dep't Commerce Oct. 4, 2004). At the

conclusion of Commerce and the U.S. International Trade Commission's investigations,

Commerce issued an antidumping duty order covering pure and alloyed magnesium. *Notice of*

*Antidumping Duty Order: Magnesium Metal From the Russian Federation*, 70 Fed. Reg.

19,930, 19,930 (Dep't Commerce Apr. 15, 2005) ("*Order*").

Nearly two years later, Commerce published notice of opportunity to request an

administrative review of the *Order* for the period from April 1, 2006 to March 31, 2007 ("period

of review"). *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;*

*Opportunity to Request Administrative Review*, 72 Fed. Reg. 15,650 (Dep't Commerce Apr. 2,

2007). Plaintiff AVISMA, a Russian magnesium metal producer, requested a review of its

imports of the subject merchandise, and USM requested a review of the magnesium metal

imports of AVISMA and Solikamsk Magnesium Works, another Russian producer. On May 30,

2007, Commerce commenced the Second Review of the *Order*.[1]  *Initiation of Antidumping and*

*Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 72 Fed. Reg.

29,968 (Dep't Commerce May 30, 2007).

Commerce published its preliminary results for the Second Review nearly a year later.

*Magnesium Metal from the Russian Federation:  Preliminary Results of Antidumping Duty*

*Administrative Review*, 73 Fed. Reg. 24,541 (Dep't Commerce May 5, 2008) ("*Preliminary*

*Results*").  In response to the Department's findings, AVISMA and USM submitted case briefs to

support changes that they believed the Department should incorporate into the *Final Results*.

Commerce rejected AVISMA's first, and a portion of its second, brief on the ground that it

contained new factual information, specifically an affidavit from Professor George Foster, an

accounting expert.[2]  *See* Pls. Br. App. Tab 8-11; *see also* Pls. Br. App. Tab 8 Ex. 1 ("Foster

Affidavit").  The Department issued the *Final Results* on September 10, 2008, wherein Plaintiff

AVISMA received a final antidumping margin of 15.77 percent.  *Final Results*, 73 Fed. Reg. at

52,642-43.

Plaintiffs and USM filed suit in this Court to contest the *Final Results*.  Alcoa Inc. and

Northwest Alloys, Inc. (collectively, "Alcoa"), domestic industrial consumers of the subject

---

[1] Solikamsk Magnesium Works did not participate in the review.

[2] According to his affidavit, George Foster has been the Paul L. and Phyllis Wattis
Professor of Management at the Graduate School of Business at Stanford University since 1988.
His academic credentials include a Bachelor of Economics (first class honors and university
medal) and Master of Economics from the University of Sydney, and a Ph.D. in Business
Administration from Stanford University.  He has honorary doctorates from the University of
Ghent, Belgium, and the University of Vassa, France.  He also is the author of *Financial
Statement Analysis* (1978 and 1986) and *Cost Accounting:  A Managerial Emphasis* (1987, 1991,
1994, 1997, and 2000), the leading selling text in its area.  Foster Aff. ¶¶ 2-3.

merchandise, filed a motion to appear as amicus curiae, which the court granted.  Plaintiffs raise

four objections to the *Final Results*:  that Commerce (1) employed an erroneous method to

allocate joint costs between magnesium and chlorine gas; (2) relied on outdated information

when calculating the chlorine gas's net realizable value ("NRV"); (3) should have granted a

constructed export price ("CEP") offset to normal value when it calculated AVISMA's

antidumping duty margin; and (4) unlawfully rejected the portions of AVISMA's case brief

containing the Foster Affidavit.  Pls. Br. 1-3.  Like Plaintiffs, USM contests the method by which

Commerce allocated joint costs between magnesium and chlorine gas.  Def.-Int. Br. 1-4.  USM

also claims that, if the court affirms the Department's allocation methodology, the Department

nevertheless erred in its adjustments to the chlorine gas's NRV.  Def.-Int. Br. 1-4.

## II. Jurisdiction & Standard of Review

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c).  The Court

grants "tremendous deference" to Commerce's final antidumping determinations due to the

"technical" and "complex" economic and accounting decisions involved, for which the

Department "possess far greater expertise than [the Court]."  *Fujitsu Gen. Ltd. v. United States*,

88 F.3d 1034, 1039 (Fed. Cir. 1996) (quotation marks omitted); *accord Thai Pineapple Pub. Co.

v. United States*, 187 F.3d 1362, 1367 (Fed. Cir. 1999).  The Court will disturb a determination

only if it is "unsupported by substantial evidence on the record, or otherwise not in accordance

with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence on the record constitutes "less than a preponderance, but more than a

scintilla."  *Novosteel SA v. United States*, 25 CIT 2, 16, 128 F. Supp. 2d 720, 725 (2001)

(quotation marks & citation omitted), *aff'd*, 284 F.3d 1261 (Fed. Cir. 2002).  It is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion" in light of the

entire record, including "whatever fairly detracts from the substantiality of the evidence." *Atl.*

*Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotation marks omitted).

This standard necessitates that the Department thoroughly examine the record and "articulate a

satisfactory explanation for its action including a rational connection between the facts found and

the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463

U.S. 29, 43 (1983) (quotation marks omitted); *accord Bando Chem. Indus., Ltd. v. United States*,

16 CIT 133, 137, 787 F. Supp. 224, 227 (1992).  That the court may draw two inconsistent

conclusions from the evidence does not preclude Commerce's ruling from being supported by

substantial evidence. *Thai Pineapple Pub. Co.*, 187 F.3d at 1365; *Novosteel SA*, 25 CIT at 12,

128 F. Supp. 2d at 730; *see FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009)

("[A] court is not to substitute its judgment for that of the agency . . . .") (quotation marks &

internal citation omitted).

To evaluate whether a Commerce determination is in accordance with law, the Court

applies the two-step test articulated by the Supreme Court in *Chevron U.S.A., Inc. v. Natural*

*Resources Defense Council*.  467 U.S. 837 (1984).  First, the court determines whether Congress

has spoken directly to the issue at hand.  If Congress's intent is clear, the court and the

Department must "give effect to the unambiguously expressed intent of Congress." *Id.* at 843.  If

the court finds the relevant statute ambiguous or silent with respect to the specific issue, it must

defer to the Department's interpretation as long as it is reasonable. *See id.*  This deference

extends to technical methodologies that Commerce may apply to fulfill its statutory mandate.

*Thai Pineapple Pub. Co.*, 187 F.3d at 1365 ("The methodologies relied upon by Commerce in making its determinations are presumptively correct."); *see Hynix Semiconductor, Inc. v. United States*, 29 CIT 995, 1000, 391 F. Supp. 2d 1337, 1342 (2005).

### III. Discussion

### A. Commerce's Decision Not to Grant a CEP Offset

Plaintiffs challenge Commerce's decision not to grant a CEP offset to normal value in the *Final Results* as "inconsistent with the statute and the facts on the record." Pls. Br. 2.

#### 1. CEP Offsets

In antidumping actions, the duty imposed is the difference between the price charged for the subject merchandise in its home market, the "normal value," and the price charged in the United States. *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1303 (Fed. Cir. 2001). In cases such as this one, where a foreign producer sells to an affiliated purchaser in the United States, Commerce calculates the U.S. price using a surrogate value, the CEP. 19 U.S.C. § 1677a(b). To ensure a fair comparison, the Department may adjust the normal value and CEP to place them "at a specific, 'common' point in the chain of commerce," i.e., at the same level of trade. *Micron Tech., Inc.*, 243 F.3d at 1303 (quotation marks omitted); *see* 19 U.S.C. § 1677b(a)(1)(B)(i).

If Commerce finds that the normal value and CEP differ partially or wholly due to a level-of-trade difference which "(i) involves the performance of different selling activities; and (ii) is demonstrated to affect price comparability, based on a pattern of consistent price differences between sales at different levels of trade in the country in which normal value is determined," the Department will modify the normal value to compensate. § 1677b(a)(7)(A);

*accord* 19 C.F.R. § 351.412(a)-(b). The party seeking such a level-of-trade adjustment must

demonstrate that one is warranted. *Fujitsu Gen. Ltd.*, 88 F.3d at 1045-46; *Corus Staal BV v.*

*United States*, 27 CIT 388, 406, 259 F. Supp. 2d 1253, 1270 (2003), *aff'd*, 395 F.3d 1343 (Fed.

Cir. 2005); *see* 19 C.F.R. § 351.401(b)(1).

      In some cases, the normal value is at a higher level of trade than the CEP, i.e., the level of

trade in the home market is more advanced than in the U.S. market, but data allowing the

Department to determine how much to adjust the normal value are unavailable. In these

circumstances, the Department grants a CEP offset and reduces the normal value by "the amount

of indirect selling expenses incurred in the country in which normal value is determined on sales

of the foreign like product but not more than the amount of such expenses for which a deduction

is made under [§ 1677a(d)(1)(D)]." § 1677b(a)(7)(B); *accord Micron Tech., Inc.*, 243 F.3d at

1305; § 351.412(f)(1)-(2).

## 2. Plaintiffs' Contentions & Analysis

      Plaintiffs insist that, when compared to AVISMA's sales of subject merchandise in the

U.S. market, its sales in the Russian market experience "more marketing functions," Pls. Br. 8,

and are made at a more advanced level of trade, Pls. Br. 29, and that the overlap in selling

activities between the two markets is "not significant." Pls. Br. 8. Furthermore, Plaintiffs assert

that there exists no similar level of trade in the home market against which to compare the U.S.

market sales and that, consequently, the Department cannot calculate a level-of-trade adjustment

to compensate for these differences. Pls. Br. 29. Specifically, they note that Tirus conducts

nearly all of the subject merchandise selling functions with respect to end-customers in the U.S.

market, leaving AVISMA with only the costs of order processing and freight and delivery

charges. Pls. Br. 29-30. By contrast, AVISMA performs all of the more elaborate end-customer

selling functions in the Russian market. Pls. Br. 29-30. To further buttress its argument for a

CEP offset, AVISMA also notes that it has only one customer for its U.S. sales, Tirus, and made

[[    ]] routine ocean freight shipments exclusively of the same product to Tirus during the period

of review. Pls. Br. 31. Meanwhile, AVISMA conducted [[    ]] individual transactions with [[

]] customers in the Russian market, which were composed of wildly varying sizes[3] and numerous

different products. Pls. Br. 32. Plaintiffs thus aver that "it is axiomatic" that AVISMA incurs

significantly greater selling expenses in its home market than in the U.S. Pls. Br. 32.

Accordingly, they believe that Commerce should grant them a CEP offset.

       Plaintiffs have not met the burden of proof to receive a CEP offset. They provided

Commerce with a document entitled "AVISMA – Selling Functions Chart," which purports to

list the "Selling Activity / Function" differences between AVISMA's home market sales to end

users, its sales to Tirus in the U.S., and Tirus's sales to U.S. customers. Pls. Br. App. Tab 1 Ex.

6. The different levels of activity are described as "NO," "L," "M," "H," or variations thereof.

Although it appears comprehensive, the chart nowhere indicates the measure by which Plaintiffs

made their evaluations. The chart could refer to the frequency, intensity, cost, or aggregate

volume of sales activity; it is impossible to discern. In other words, the chart does not illuminate

to what degree, if any, the disparity between the normal value and CEP results from differing

levels of trade. Likewise, the data on the number of shipments made to the U.S. provide no

insight when compared to the number of transactions made in Russia. A shipment could contain

---

[3] AVISMA's home market transactions varied from [[    ]] to [[    ]] metric tons. Pls. Br. 32.

any number of transactions or a single transaction with any number of shipments. Finally, the

different number of customers for AVISMA's home market and U.S. sales could lead to

significantly different sales activities, but Plaintiffs have not buttressed this assertion with facts.

Commerce cannot base its decisions on conclusory statements alone. *See NSK Corp. v. United*

*States*, Slip Op. 09-91, 2009 Ct. Int'l. Trade LEXIS 98, at *28 (Aug. 31, 2009). Despite their

claims to the contrary, Plaintiffs have not provided the Department with the quantifiable data, or

even logically sound reasoning, that would allow Commerce to grant a CEP offset. Commerce's

decision not to grant the offset is therefore affirmed.

### B. The Foster Affidavit

The Foster Affidavit presents George Foster's opinion on how the Department should use

data on the record to calculate the NRV of raw magnesium and chlorine gas in AVISMA's

production process. Plaintiffs first contend that the Department acted unlawfully when it rejected

the affidavit's inclusion in their case brief on the grounds that the affidavit constitutes untimely

submitted new factual information pursuant to 19 C.F.R. § 351.301(b)(2).[4] According to

Plaintiffs, the affidavit "interprets the facts [on the record], rather than substitutes or adds facts,"

Pls. Br. 34, and "corroborates claims and data" previously submitted. Pls. Br. 36. It therefore

falls outside the regulation's purview because it does not constitute new factual information. Pls.

Br. 36. Plaintiffs also argue that 19 C.F.R. § 351.309(c)(2) requires that the Department take the

Foster Affidavit into consideration.[5] Pls. Br. 34. They bolster this assertion with their insistence

---

[4]The deadline for submissions of factual information to the Department for an administrative review is 140 days after the last day of the anniversary month. § 351.301(b)(2).

[5] The regulation states, in relevant part, that "case brief[s] must present all arguments that continue in the submitter's view to be relevant to [Commerce]'s final determination or final

that the Department's NRV calculation method for magnesium and chlorine gas, which the

Foster Affidavit critiques, first appeared in the *Preliminary Results*.  Pls. Br. 34-35.  According

to Plaintiffs, even if the affidavit presents new factual information, without its admission, they

will not receive a fair opportunity to contest the *Preliminary Results*.  Finally, Plaintiffs liken the

contents of the Foster Affidavit to witness testimony and "additional written argument" allowed

at hearings pursuant to 19 C.F.R. § 351.310(d)(2) – hearings that occur after publication of the

preliminary results and well after the submission deadline in § 351.301(b)(2).  Pls. Br. 39.

     While Plaintiffs' ultimate conclusion in this instance may be correct, their reasoning is

not.  Long-established principles of administrative law imbue agencies with ample discretion to

craft their own rules and procedures, including "the authority to establish and enforce time limits

concerning the submission of written information and data."  *Coalition for the Pres. of Am.*

*Brake Drum & Rotor Aftermkt. Mfrs. v. United States*, 23 CIT 88, 94-95, 44 F. Supp. 2d 229, 237

(1999) (citing *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519,

544-45 (1978)) ("*Am. Brake Drum*").  With respect to Commerce's handling of antidumping

matters in general and § 351.301 specifically, the Court has upheld Commerce's policy of

establishing time limits for the submission of factual information, because "Commerce clearly

cannot complete its work unless it is able at some point to 'freeze' the record and make

calculations and findings based on that fixed and certain body of information."  *Id.* at 97, 44 F.

Supp. 2d at 239 (quotation marks omitted).[6]  As already noted, § 351.301(b)(2) sets the deadline

---

results."  § 351.309(c)(2).

     [6] The regulation at issue in *Am. Brake Drum*, 19 C.F.R. § 353.31, now is codified at
§ 351.301.

for the submission of new factual information to Commerce for the final results in administrative

reviews 140 days after the last day of the anniversary month of the order under review, in this

case on September 17, 2007.  *See* Def. Br. 35.  Plaintiffs first attempted to submit the Foster

Affidavit on June 12, 2008, well after the deadline.  *See* Pls. Br. App. Tab 8 at 1.

Plaintiffs' hope to circumvent this deadline by characterizing the Foster Affidavit as

opinion and commentary, rather than new factual information, fails.  "[F]actual information" for

the purposes of antidumping proceedings includes:  "(i) Initial and supplemental questionnaire

responses; (ii) Data or statements of fact in support of allegations; (iii) Other data or statements

of facts; and (iv) Documentary evidence."  § 351.102(b)(21).  The Court has held that expert

opinion analyzing reported information "clearly assumes the weight of evidence" and, as such,

amounts to "[d]ata or statements of fact in support of allegations," i.e., factual information.  *Am.*

*Brake Drum*, 23 CIT at 98-99 & n.19, 44 F. Supp. 2d at 240-41 & n.19 ("An expert witness'

testimony . . . is evidence, even though its purpose is to help the fact finder understand the direct

evidence presented." (brackets, quotation marks & citation omitted)).  The Foster Affidavit,

which explicitly aims to guide Commerce in its assessment of data already on the record

unambiguously falls into this category.  *See* Foster Aff. ¶ 1.  The court, therefore, typically would

affirm the Department's decision to exclude the affidavit.  *See, e.g.*, *Am. Brake Drum*, 23 CIT at

98, 44 F. Supp. 2d at 240; *Asociacion Colombiana de Exportadores de Flores v. United States*,

13 CIT 13, 24-25, 704 F. Supp. 1114, 1124 (1989), *aff'd*, 901 F.2d 1089 (Fed. Cir. 1990).

However, the circumstances before the court are not typical.  As the Department admits in

the *Final Results* and in its brief, how to calculate the NRV of the chlorine gas in this case is an

issue of first impression for the agency.  Def.-Int. Br. App. Tab 20 ("*I&D Memo*") at 15 ("We

have not had a joint-product scenario where one of the joint products was used as a catalyst to

facilitate a second joint-product scenario."); Def. Br. 6-7.  Confronted with this blank slate,

Commerce turned to seminal accounting texts, including one co-authored by George Foster, for

guidance.  *See I&D Memo* at 15 n.5; Def. Br. 15-16, 17, 20.  Although the Department has wide

latitude to develop procedures to accommodate the shifting economic landscape in which it

operates, the court cannot ignore that a leading accounting expert – one to whom Commerce

frequently turns for guidance[7] – has deemed the accounting method used in the *Final Results*

"clearly inappropriate" and stated that the results from this method "cannot be correct."  Foster

Aff. ¶¶ 5.5, 6.3.  In this situation, especially where the Department may establish methodological

precedent for future similar investigations, the court's role in striking a balance between the need

for agency finality and the mandate for accuracy in antidumping determinations becomes

paramount.  *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006); *see*

*Mittal Steel USA, Inc. v. United States*, Slip. Op. 07-117, 2007 WL 2701369, at *2 (CIT Aug. 1,

2007) (noting Commerce's "duty to calculate antidumping rates as accurately as possible");

*Helmerich & Payne v. United States*, 22 CIT 928, 938, 24 F. Supp. 2d 304, 313 (1998) ("[F]air

---

[7] *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances:  Certain Orange Juice from Brazil*, 71 Fed. Reg. 2183 (Dep't Commerce Jan. 13, 2006); *Notice of Final Determination of Sales at Less Than Fair Value:  Live Swine From Canada*, 70 Fed. Reg. 12,181 (Dep't Commerce Mar. 11, 2005); *Notice of Final Determination of Sales at Less Than Fair Value:  Structural Steel Beams From South Africa*, 67 Fed. Reg. 35,485 (Dep't Commerce May 20, 2002); *Notice of Final Determination of Sales at Less Than Fair Value:  Certain Softwood Lumber Products From Canada*, 67 Fed. Reg. 15,539 (Dep't Commerce Apr. 2, 2002); *Notice of Final Determination of Sales at Less Than Fair Value:  Pure Magnesium from Israel*, 66 Fed. Reg. 49,349 (Dep't Commerce Sept. 27, 2001); *Elemental Sulphur From Canada; Final Results of Antidumping Finding Administrative Review*, 61 Fed. Reg. 8239 (Dep't Commerce Mar. 4, 1996); *Final Determination of Sales at Less Than Fair Value: Canned Pineapple Fruit From Thailand*, 60 Fed. Reg. 29,553 (Dep't Commerce June 5, 1995).

and accurate determinations are fundamental to the proper administration of our dumping laws.")
(citation omitted); *Bowe-Passat v. United States*, 17 CIT 335, 341 (1993) (not reported in F.
Supp.) (same) (citing *NSK, Ltd. v. United States*, 16 CIT 745, 748, 798 F. Supp. 721, 724 (1992);
*Industrial Quimica del Nalon, S.A. v. United States*, 13 CIT 1055, 1060, 729 F. Supp. 103, 108
(1989)); H.R. Rep. No. 98-725, at 43 (1984) ("The Committee . . . believes it essential [for] the
proper enforcement of the laws that information used in determining . . . the actual amount of any
. . . antidumping duty to be assessed under outstanding orders [be] accurate to the extent
possible."); *see also Koyo Seiko Co. v. United States*, 14 CIT 680, 683, 746 F. Supp. 1108, 1111
(1990) ("[J]udicial authority supports granting a request for remand if it fosters and promotes
fundamental fairness.") (quotation marks & citation omitted).  Consequently, the court finds that
to ensure the intent of the antidumping laws is upheld, the Department should take into account
the Foster Affidavit when considering the best methodology for calculating the NRV for the
chlorine gas.  *See NEC Home Elecs., Ltd. v. United States*, 54 F.3d 736, 743-44 (Fed. Cir. 1995)
(ordering Commerce to reopen record to include and consider expert affidavit submitted after
publication of preliminary determination and remanding determination); *see also Jinfu Trading
Co. v. United States*, Slip. Op. 07-95, 2007 Ct. Int'l Trade LEXIS 106, at *28-29 (June 13, 2007)
(ordering reopening of administrative record so party may add pertinent information).  The court
takes no position on the merits of the issue.

### IV. Conclusion

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Judgment Upon the Agency Record is
**GRANTED** in part and **DENIED** in part, that the court reserves the parties' remaining

arguments for future determination, and that the case is **REMANDED** to Commerce for further

proceedings.  Specifically, it is

**ORDERED** that Commerce's decision not to grant a constructed price export offset is

affirmed; it is further

**ORDERED** that Commerce admit the Foster Affidavit into the record and fully consider

its arguments upon remand; and it is further

**ORDERED** that Commerce shall have until January 29, 2010, to file its remand results

with the Court.  Plaintiffs and Defendant-Intervenor shall file supplemental responses, if any,

with the Court no later than March 1, 2010.  In view of this opinion, the previously scheduled

oral argument of November 18, 2009 is hereby adjourned.


Dated:   October 20, 2009                                          /s/ Judith M. Barzilay
        New York, New York                                    Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                     Deputy Clerk